IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSBORN ERNIE WILSON, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | Civil Action No. H-14-2687 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Osborn Ernie Wilson filed a *pro se* section 2254 habeas petition challenging his conviction and sixty year sentence for aggravated robbery with a deadly weapon. Respondent filed a motion for summary judgment (Docket Entry No. 12), to which petitioner filed a response (Docket Entry No. 17).

Based on consideration of the motion, the response, the record, and the applicable law, the Court **GRANTS** respondent's motion for summary judgment and **DISMISSES** this case for the reasons that follow.

### I. PROCEDURAL BACKGROUND

Petitioner was convicted of aggravated robbery with a deadly weapon and sentenced to sixty years incarceration. The conviction was affirmed on appeal. *Wilson v. State*, No. 14–11–00860–CR, slip op. (Tex. App. – Houston [14th Dist.], 2013, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's application for state habeas relief.

Petitioner raises the following claims for federal habeas relief in the instant petition:

1. Petitioner's Fourth Amendment search and seizure rights were violated.

2. Appellate counsel was ineffective in

   a. failing to challenge extraneous offense evidence as lacking relevancy; and

   b. failing to challenge petitioner's pre-arrest detainment.

Respondent argues that petitioner's claims are without merit and should be dismissed.

## II. FACTUAL BACKGROUND

The intermediate state appellate court set forth the following statement of facts in its opinion affirming petitioner's convictions:

> At approximately 6 a.m. on October 30, 2008, an unidentified man robbed Corina Torres with a knife. Later that morning, police officers discovered Torres's purse under a vehicle seat in which appellant had been sitting, along with a wallet belonging to Robert Patterson, who had been robbed two days earlier. This appeal arises out of appellant's trial for robbing Torres.
>
> Prior to the trial, appellant moved to suppress evidence seized from the vehicle he was in when police detained him. At a hearing on the motion, two Houston police officers testified that, on the morning of the Torres robbery, they encountered appellant while patrolling a high-crime area. The officers noticed a vehicle parked in the driveway of what they described as a 'crack house.' Appellant sat in the driver's seat; another man was in the front passenger's seat. The officers parked their patrol car and approached the vehicle.
>
> As an officer approached appellant's door, 'the door flung open,' and appellant 'jumped out, yelling.' At that point, the officer observed 'a white female's I.D. on the [vehicle's] floorboard,' along with a checkbook and what appeared to be a deposit slip. The officer also observed that both of the car's occupants were 'black males.' Meanwhile, the second officer asked the passenger to exit

2

the vehicle and then observed the identification card of what 'looked like a white female' as well as a purse and 'several different cards' on the floor of the driver's side.

The officers testified that appellant appeared 'agitated,' 'excited,' 'nervous,' 'shaky,' 'combative,' and 'aggressive.' Appellant's head movements led one of the officers to believe that he would flee, so appellant and his companion were handcuffed and escorted to the police car. There, the officers attempted to question appellant about the purse and the female's identification card. Appellant said 'something about a crack head.' Beyond this, neither officer recalled him explaining why he possessed a woman's purse and identification. Appellant did, however, tell the officers that the vehicle belonged to his girlfriend.

The officers collected identification from the two men. They checked for outstanding warrants; appellant's companion had three. The officers also learned to whom the vehicle was registered and, after physically inspecting the female identification card, determined that it was a driver's license and that it did not belong to appellant, his companion, or the vehicle's registered owner. The officers then searched the vehicle and, in addition to finding the purse under the driver's seat, found several other items, including a wallet, two identification cards of males, and some credit cards.

The officers took appellant to the police station where they connected two of the recovered identification cards to the Torres and Patterson robberies. Later that day, both Torres and Patterson viewed a police lineup and each identified appellant as the assailant in their respective robberies. The trial court denied appellant's motion to suppress the evidence found in the vehicle and, during the subsequent trial, the State introduced that evidence.

Appellant's defense at trial hinged in part upon the testimony of Claudel Rudd, who stated that appellant had purchased the purse and several other items from him on the morning of the Torres robbery. Appellant's counsel attempted to lay the groundwork for this defensive theory by asking one of the officers on cross-examination whether he 'recall[ed] [appellant] saying that he got [the purse] from quote, 'a crackhead.'

The State argued that, because appellant's counsel asked this question, it could introduce evidence rebutting the defensive theory that appellant 'got the

property lawfully from [a] crackhead.' To disprove appellant's theory, the State sought to offer evidence of the uncharged Patterson robbery. An officer then testified about retrieving a brown wallet from the car, and Patterson identified this wallet as the one appellant stole from him.

Appellant further developed this defensive theory during his case-in-chief. Appellant's counsel elicited testimony from Rudd that, on the morning of the Torres robbery, Rudd was panhandling when an unidentified black man deposited a 'nice' 'zip bag' in a nearby trash can. Rudd testified that he retrieved the bag, which contained 'a purse, . . . a brown wallet, . . . credit cards, [and] Social Security cards.' Rudd said that he was addicted to cocaine at the time and sold the purse and its contents to appellant for ten dollars. Despite Rudd's testimony, the jury convicted appellant of the Torres robbery.

*Wilson*, 2013 WL 980169, at *1–3.

## III. THE APPLICABLE LEGAL STANDARDS

A.  <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are

4

materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.* (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively

5

unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.  <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the

federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. FOURTH AMENDMENT CLAIMS

Petitioner argues that his Fourth Amendment rights were violated by an unlawful detention and subsequent search and seizure. As correctly argued by respondent, these claims are not cognizable federal habeas claims, and are barred by *Stone v. Powell*, 428 U.S. 465 (1976).

It is well established that, where a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the claim. *Id.*, at 494. The Fifth Circuit Court of Appeals has interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320–21 (5th Cir. 2002) ("If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."). Here, petitioner employed available opportunities to litigate his Fourth Amendment claims by pursuing them at both trial and on direct appeal.

Petitioner's Fourth Amendment claims may not be prosecuted in context of this federal habeas proceeding, and the claims must be dismissed for failure to state a cognizable habeas claim.

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687.

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.

*Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998).

Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

In the instant case, petitioner complains that appellate counsel failed to argue on appeal that extraneous offense evidence offered at trial was not relevant and failed to challenge his pre-arrest detainment.[1] However, petitioner fails to show that, but for counsel's failure to raise these issues on direct appeal, there is a reasonable probability that the result of the appeal would have been different. Contrary to petitioner's allegations, the intermediate state appellate court examined the extraneous offense evidence and determined that it was relevant and admissible. *Wilson*, 2013 WL 980169, *2–5. Consequently, even assuming counsel were deficient, petitioner cannot demonstrate actual prejudice in this regard.

Petitioner further fails to demonstrate that, but for appellate counsel's failure to challenge his warrantless detention by the police officers prior to his arrest, there is a reasonable probability that the result of the appeal would have been different. The state trial court found on collateral review that, "The applicant also fails to show that, had appellate counsel raised the issues of relevancy and search and seizure, the applicant would have prevailed on direct appeal." *Ex parte Wilson*, p. 90. The state trial court further found that appellate counsel provided petitioner effective representation on appeal, and that petitioner failed to meet his burden of proof under *Strickland*. *Id.*, pp. 90–91. Petitioner's conclusory

---

[1] Petitioner expressly claimed on state collateral review and in his instant petition that appellate counsel failed to challenge the "relevancy" of the evidence. Any attempt by petitioner to now argue that counsel should have challenged the evidence as "unduly prejudicial" would result in dismissal of the claim as procedurally defaulted and barred from consideration.

allegations that he was illegally detained and that the issue would have been successful on appeal are insufficient to meet his burden of proof under AEDPA.

The state court denied relief on petitioner's claims for ineffective assistance of appellate counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's Sixth Amendment claims.

## VI. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 29 day of January, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE